John D. Bennett, S.
In this proceeding for advice and direction pursuant to section 215 of the Surrogate’s Court Act, the executors seek an order approving a contract of sale dated *490 December 27, 1963 between J. B. W. F. Corp. as seller and Nathan Weinstein as purchaser of certain real property described therein, and authorizing and directing the executors, as holders of all the issued and outstanding shares of stock of the J. B. W. F. Corp., to effect the sale and conveyance by the said corporation.
The real property is the sole asset of the corporation and the decedent owned all of the corporate stock. The corporation was formed some years ago by the decedent and his brother Nathan, at that time each owning 50% of the stock. Subsequently Nathan resigned as an officer and director, assigned his stock to the decedent subject to an option running to December 8,1965 to repurchase 50% of the stock for $10,552.88, and received the right to and occupies the premises free of rent, taxes, sewer charges, and insurance premiums for the 10-year period ending December 8, 1965. Under this contract Nathan will pay $13,300 for the property, plus adjustments in excess of $6,000.
The executors value the property at $26,600 and a legatee and a trust beneficiary, who oppose the application, value the property at $38,000. The proponent and the objectants interpret the stock option held by Nathan, and his right of possession until December 8, 1965, as affecting the value from opposing viewpoints, and the special guardian concurs with the executors. All of the parties speculate on what action Nathan will take at the termination of the 10-year term in the event the sale is not consummated at this time. The corporation is indebted to the estate in excess of $14,000 for moneys advanced to carry the property. Even assuming the possibility of arriving at a proper valuation of the property, in view of the nebulous factors affecting such value, there is before the court the fundamental question of jurisdiction over the proceeding. In a prior proceeding in this estate for similar relief, no question of jurisdiction was raised.
The petitioners base their case for jurisdiction on the dictum in Matter of Pulitzer (139 Misc. 575, affd. 237 App. Div. 808). In that ease the executors sought advice and direction as to the sale of assets of the corporation of which the estate held the majority of stock. After holding that the Surrogate’s Court has no legal power to set itself up as a regulatory body over corporate action, is not authorized to determine disputes between stockholders, to pass on conflicting offers of purchase of corporate assets, and that to do so would jeopardize the rights of minority stockholders and creditors, Surrogate Foley (p. 585) stated that “A different situation might arise and *491 different responsibilities accrue where the entire stock of the corporation was owned by the estate. In cases of that character, the court, in its equitable powers, might disregard the corporate entity.”
This dictum in Matter of Pulitzer (supra), decided in 1931, has not been the basis for any judicial determination that the Surrogate’s Court has jurisdiction over the sale of corporate assets where the estate holds all of the issued corporate stock that has come to this court’s attention, and it is significant that the petitioners and special guardian have not cited a single decision to that effect in the extensive briefs filed herein.
The petitioners are correct when they state that the Surrogates’ Courts “ regularly pierce the corporate veil” and they cite many cases to that effect. The instances where this is done, however, are those where the executors holding corporate stock are required to disclose and account to the legatees, devisees and beneficiaries for their actions in voting, managing or controlling the corporate activities, and where it is necessary to carry out the testator’s intent.
Petitioners, at pages 3 through 6 of their reply memorandum of law, filed May 27, 1964, in describing why they did not petition to provide for the sale of the corporate stock to Nathan, supply the very reasons why the Surrogate’s Court should not exercise jurisdiction over the sale of corporate assets.
Having previously filed an affidavit that there are no claims or indebtedness owed by the corporation (except the indebtedness to the estate), the petitioners in their reply memorandum of law state that a sale of the stock would require Nathan to take the stock subject to “1) any and all existing contractual or quasi-contractual liabilities of the corporation for salaries, wages, services rendered, brokerage commissions, goods sold and delivered, etc., 2) any and all existing tort liabilities of the corporation not covered by insurance and 3) any and all existing liabilities of the corporation for income taxes or other taxes arising out of transactions which occurred prior to the consummation of the sale of the stock of the corporation to Nathan Weinstein. Petitioners do not know of any such existing contractual or quasi-contractual liability, tort liability or income tax liability of the corporation. However, as shown in the petition filed herein, the decedent Benjamin Weinstein was the sole stockholder and principal officer of the corporation throughout the period from December 8,1955 to his death on February 4, 1959. It is possible that a liability of the aforesaid nature was incurred by the corporation during the said period when the decedent had complete control of the corporation, that such *492 liability is now in existence and that petitioners have no knowledge of such liability. Moreover, it is possible that an action against the corporation based on such liability was commenced during the said period by the service of a summons upon the decedent as an officer of the corporation, that such action is still pending and that petitioners have no knowledge of such action. If petitioners as executors were to enter into a contract with Nathan Weinstein providing for the sale by them as executors of all of the outstanding stock of the corporation to Nathan Weinstein, undoubtedly Nathan Weinstein would require that such contract include an agreement on the part of petitioners as executors to indemnify him against any loss, cost or expense which might be incurred by him, as the sole stockholder of the corporation, in connection with any action or claim against the corporation based on an allegation that such liability exists. Insurance against such loss, cost or expense would not be readily available to him.”
The petitioners continue by discussing the effects of an indemnification agreement and the probability of having to maintain a reserve of estate assets to cover such contingent liabilities. They conclude that the sale of the corporate real property now before the court, if consummated by the court’s direction, “will not convert any existing unknown contractual or quasi-contractual liability, tort liability or income tax liability of J. B. W. F. Corp. into a liability of petitioners as executors. All such unknown liabilities will remain liabilities of the said corporation alone.”
It should be apparent that the court should not be the means of jeopardizing or infringing upon the rights of creditors and those who for whatever reason might have a claim against the corporation. The exercise of jurisdiction and approval of the sale of the corporate assets could leave a hollow shell for such creditors to proceed against. Nor should the court be used as a means of relieving the executors from their personal liabilities and consequences of their acts performed in their fiduciary capacity.
As stated in Matter of Pulitzer (139 Misc. 575, affd. 237 App. Div. 808, supra), an application under section 215 of the Surrogate’s Court Act for advice and direction applies only to a sale of property owned directly by the estate and not to assets owned by an intervening corporation in which the estate is interested.
The refusal of the court to grant advice and direction, however, should not be taken as an indication of its opinion of the merits of the proposed sale.